Lynn D. LARSON, Plaintiff,

v.

CLASSIC CORP., a Maryland
corporation, Defendant.

No. 86 C 6379.

United States District Court,
N.D. Illinois, E.D.

April 12, 1988.

William M. Lee, Jr., Lee, Smith & Zickert, Chicago, Ill., John A. Beehner, Dennis L. Thomte, Zarley, McKee, Thomte, Voorhes & Sease, Omaha, Neb., for plaintiff.

Joseph P. Della Maria, Jr., Kenneth P. Taube, Rothschild, Barry & Myers, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Lynn Larson ("Plaintiff") has sued defendant Classic Corporation ("Defendant") for the latter's alleged infringement of his patented waterbed mattress design, U.S. Design Patent No. 270,693. Defendant has now moved for summary judgment on the grounds that the design patent for the mattress is invalid because the patented features of the mattress are obscured during the waterbed's normal use. For the reasons set forth below, the motion will be denied.

## DISCUSSION

Plaintiff obtained his design patent, pursuant to 35 U.S.C. § 171 ("§ 171"), for two aspects of his waterbed mattress: (1) the absence of visible seams on the top and sides of the mattress; and (2) externally visible reinforcement corner patches extending onto the top and bottom surfaces of the mattress. Defendant argues that the patent is invalid because § 171 permits design patents only for those aspects of manufactured articles which are "new, original and ornamental," while the elements of Plaintiff's mattress for which his patent was granted are totally obscured during the mattress' "normal use" and thus are not "ornamental" as a matter of law.

Although Defendant cites a number of cases in which the courts have, indeed, invalidated design patents on the grounds that their patented features cannot be seen during normal use, it ignores the reasoning behind these decisions. Visibility during an article's "normal use" is not a statutory requirement of § 171, but rather a guide-

line for courts to employ in determining whether the patented features are "ornamental." Where a particular feature cannot be seen during "normal use," it generally follows that the feature is not ornamental—i.e., not designed for the purpose of enhancing the product's appearance. *See, e.g., Application of Stevens,* 617 F.2d 261 (C.C.P.A.1949) ("It has been held repeatedly that articles which are concealed or obscure in normal use are not proper subjects for design patents, *since their appearance cannot be a matter of concern.*") (emphasis added); *Norco Products, Inc. v. Mecca Development,* 617 F.Supp. 1079 (D.Conn.1985) (invalidating design patent for fluid filter because, although the patented feature could be seen at time of sale or repair, it was totally hidden during the period of normal use); *A. & H. Manufacturing Company v. Contempo Card Co., Inc.,* 576 F.Supp. 894 (D.R.I.1983) (invalidating design patent for jewelry display card because the subject of the patent, the foam pouch on the back of the card which retains the excess chain, is not intended to be seen in normal use). Thus, the "normal use" test has become a generally-accepted way of determining whether a design patent for the feature is appropriate.

■ However, where the "normal use" of a product is itself the source of debate, a myopic focus on this term is misplaced. The ultimate question, after all, is not whether a particular feature is visible during normal use, but rather whether that feature has some aesthetic, as opposed to purely functional or utilitarian, qualities. *Franklin Knitting Mills, Inc. v. Gropper Knitting Mills, Inc.,* 15 F.2d 375 (2d Cir. 1926), *cert. denied,* 273 U.S. 761, 47 S.Ct. 476, 71 L.Ed. 878 (1927); *C & M Fiberglass Septic Tanks, Inc. v. T & N Fiberglass Manufacturing Co.,* 214 U.S.P.Q. 159, 160 (D.S.C.1981) ("the statutory grant of a design patent is for appearance, not for function nor utility"). To have Plaintiff's patent declared invalid, Defendant must prove that the appearance of the patented features of Plaintiff's waterbed mattress is "of [no] consequence to" Plaintiff's customers. *C & M Fiberglass Septic Tanks, Inc. v. T & N Fiberglass Manufacturing Co.,*

214 U.S.P.Q. at 160; *Ex Parte Wolfer,* 121 U.S.P.Q. 319, 321 (P.O.B.A.1958) (bead portion of automobile tire was entitled to patent because, although "the bead is concealed when it is in position for its normal and intended use, ... [its] appearance ... is of material concern to the general public"). *See also Bergstrom v. Sears, Roebuck & Company,* 496 F.Supp. 476, 488 (D.Minn.1980). More importantly, to succeed in its motion for summary judgment, Defendant must demonstrate the absence of a genuine issue regarding this matter. *See Armco, Inc. v. Cyclops Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985) (where "there are genuinely disputed issues of material fact, summary judgment cannot be utilized as the tool for deciding those issues").

■ Defendant has failed to meet this burden. First, Defendant's submissions focus entirely on what constitutes a "normal use" of a waterbed mattress. Defendant does not even attempt to make the connection between this issue and the one which it must prove. Plaintiff, on the other hand, has provided substantial evidence that the appearance of a waterbed mattress does, in fact, play a role in its customers' decisions to purchase his product. Indeed, the testimony of *Defendant's* President himself suggests that "the visual appearance of [the] waterbed mattress product is one of the considerations relative to a purchaser's purchase of that product." Thus, whether the appearance of the waterbed mattress is a matter of concern to the purchasing public can only be resolved at trial.

Moreover, even assuming arguendo that proof that the waterbed mattress' patented features are obscured during "normal use" could suffice to entitle Defendant to summary judgment, Defendant would still fall short here. For Plaintiff has provided sufficient evidence to establish the existence of a genuine issue as to the "normal use" of the mattress. Just how much of the time waterbed mattresses are "normally" covered by bedding, and how many of Plaintiff's customers conform to this "normal" practice are, in this court's view, questions best left for resolution at trial, and for the testimony of those more prac-

ticed in the art, or craft, of bedding. This much is patently clear.

## CONCLUSION

Defendant's motion for summary judgment of invalidity of U.S. Design Patent No. 270,693 is denied.